```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x
GARY WHITE,
                         Plaintiff,
                                              06 Civ. 11361(DAB)(DFE)
         -against-
                                              REPORT AND
                                              RECOMMENDATION
Superintendent ROBERT ERCOLE,                 TO JUDGE BATTS

                         Defendant.
--------------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

Gary White, a pro se prisoner, has brought this suit under the civil rights statute, 42 U.S.C. §1983, based on a "slip and fall" incident that occurred on August 25, 2006, while he was housed at Green Haven Correctional Facility. His Complaint (dated September 5, 2006) was mailed from Green Haven with a postmark of September 12, 2006.

On January 19, 2007, Assistant Attorney General Donald Nowve served and filed a Notice of Motion to Dismiss pursuant to Fed. R. Civ. Pr. 12(b)(6), along with his Declaration, a supporting Memorandum of Law ("Def. Mem.") and a 1/16/07 Declaration of Thomas G. Eagen.[1]

On April 25, 2007, I received from White an undated Affirmation in Opposition; I am annexing it to this Report. AAG

---

[1] AAG Nowve also served and filed a "Notice Pursuant to Local Civil Rule 56.2 to Pro Se Litigant Opposing Motion for Summary Judgment." This notice was substantially the same as the "Local Rule 12.1 Notice to Pro Se Litigant" set forth in our Court's Local Civil Rule 12.1 ("Notice to Pro Se Litigants Opposing Motions to Dismiss or for Judgment on the Pleadings Treated as Motions for Summary Judgment"). Indeed, the Def. Mem., at p. 4, referred to this notice as a "Local Rule 12.1 Notice."

Nowve served and filed a Reply Memorandum of Law on June 7, 2007. I recommend that Judge Batts dismiss the Complaint because White failed to exhaust his administrative remedies; moreover, the Complaint merely alleges negligent conduct that does not rise to the level of a violation of the federal Constitution.

The Complaint is on the standard form provided by our Court's Pro Se Office for prisoners bringing §1983 actions. White describes the incident that prompted this lawsuit as follows:

> On 8-25-06 at approximately 11:30 a.m. I was returning to my cell - E-block - 237. As I was walking to my cell, I slipped in a massive amount of water. That was not mopped up . . . . There were no wet floor signs on the company [premises?] to inform anyone the floor was wet! Because of the negl[ig]ence of this incident, I slipped and fell and hit my face area on the cell bars. At which time I was taken to the facility hospital, and then transferred to the outside hospitals. I advised the doctor of what happen[ed], and he confirmed my injuries were sustained by hitting my face on a very hard surface (bars). There have been several complaints, regarding the placement[] of wet floor signs. Nothing has been resolved through the I.L.C. [Inmate Liason Committee] or grievance dept. Wet floor signs are a mandatory procedure according to safety procedures! For the safety of all, not just myself the Supt. of this facility is []liable and neglects to [en]force the safety procedures required by law.

White alleges that four of his lower teeth "were completely knocked out, [but] were put back in place by medical wire."

In Part IV of the form Complaint ("Exhaustion of

Administrative Remedies"), White states that he filed a grievance "concerning safety pre-cautions" with the "inmate grievance - I.L.C.". Question F.2 on the form asks: "What was the result, if any?" To this he answered: "Never spoke to me, never had a hearing." Question F.3 asks: "What steps, if any, did you take to appeal that decision? Describe all efforts to appeal to the highest level of the grievance process." White responded: "(None) I never received a final decision."

In his Memorandum of Law, AAG Nowve urges our Court to dismiss the Complaint for three separate reasons. First, White failed to exhaust his administrative remedies. Second, negligence does not rise to the level of a constitutional violation. Third, White does not allege any personal involvement by Superintendent Ercole in the alleged failure to post signs warning about the wet floor.

In support of the first argument, Thomas Eagen's Declaration states that (1) Green Haven's records show only two 2006 grievances by White (Exh. A) neither of which concerned any slippery condition or any lack of "wet floor" signs, and (2) the records of the Central Office Review Committee ("CORC") show that White never appealed to CORC about any grievance except a 2002 grievance about a use of force (Exh. B).

White responds in his Affirmation in Opposition:

> 5) The plaintiff did file a grievance with regards to a slipping and falling

3

> incident that took place at Green Haven. It
> is the plaintiff's view that he received no
> response, due to corrupt measures taken to
> discontinue, dispose and to void grievance,
> and so such grievance could not realistically
> be brought to a CORC level, for review, and
> responds thereby denying plaintiff his
> liberty and constitutional right to due
> process. Soon thereafter plaintiff was
> transferred [to Sing Sing].

Pursuant to *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), I will give a liberal construction to this statement and the rest of his affirmation. I read White's arguments to be (1) that an appeal to CORC would have been futile ("such grievance could not realistically be brought to a CORC level"), and (2) that his transfer from Green Haven to Sing Sing somehow precluded him from pursuing the grievance process regarding events that occurred at Green Haven. In essence, White is asking our Court to excuse his failure to exhaust administrative remedies, and to address the merits of his complaint despite the Prison Litigation Reform Act.

The Reply Memorandum points out that White has failed to submit any evidence to support his allegation that he filed an initial grievance. Further, it is undisputed that White took no steps to appeal to CORC. Hence, the main issue is whether he has shown any justification that would excuse him from the statutory requirement of full exhaustion of all administrative remedies, including all appeals.

DISCUSSION

When ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007). In addition, the court must draw all reasonable inferences in favor of the plaintiff. *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 250 (2d Cir. 2001). Because White is a <u>pro</u> <u>se</u> plaintiff, his complaint "is to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (internal quotation marks and citations omitted). However, "to survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "'to raise a right to relief above the speculative level.'" *Atsi Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), *quoting Twombly*, 127 S.Ct. at 1965 (2007).

In a §1983 case where the defense argues lack of exhaustion, the court has the option of converting a dismissal motion into a motion for summary judgment, so that the Court may consider materials outside the pleadings in order to resolve the issue of exhaustion. Fed. R. Civ. Pr. 12(b)(6) and 12(d); *Collins v. Goord*, 438 F.Supp.2d 399, 411-12 (S.D.N.Y. 2006) (Mukasey, J.). In my view, Mr. Eagen's Declaration is an appropriate document to

5

be considered.

1. <u>White failed to exhaust his administrative remedies</u>.

In 42 U.S.C. §1997e(a), the Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819 (2001), the Supreme Court made clear that this exhaustion requirement is mandatory, and that it applies "irrespective of the forms of relief sought and offered through administrative avenues," *id*. at 741, n. 6, as long as a prison grievance tribunal had authority to take some responsive action.  Further, it applies to all prisoners seeking redress for prison circumstances or occurrences, regardless of whether a prisoner complains about general prison conditions or about a specific incident.  *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983 (2002).  Moreover, the PLRA requires that the prisoner's exhaustion must be "proper." *Woodford v. Ngo*, 546 U.S. 81, 126 S.Ct. 2378, 2387 (2006).  "This means ... that a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 126 S.Ct. at 2384.

The New York State Department of Correctional Services

("DOCS") has an established, formal, internal administrative grievance procedure for prisoner complaints. See 7 N.Y.C.R.R. Part 701 "Inmate Grievance Program." The DOCS Inmate Grievance Program is essentially a three-step process. 7 N.Y.C.R.R. §701.1(c), §701.5. First, an inmate must submit his grievance to the Inmate Grievance Review Committee ("IGRC") at his facility. Second, after receiving a written response from the IGRC, the inmate may appeal to the superintendent. Third, after he receives the superintendent's written response, he may appeal to the Central Office Review Committee ("CORC") in Albany. 7 N.Y.C.R.R. §701.5. [2] Before filing a §1983 action in federal court, a New York prisoner must appeal all the way to the CORC.

Thomas Eagen is the Director of the Inmate Grievance Program and he is custodian of the records maintained by CORC, which is the body that renders final administrative decisions under the Inmate Grievance Program. In his Declaration, Director Eagen states that CORC's files and computer database contain records of all appeals received from the IGP Offices of all New York State prisons going back to 1990. CORC's records show that Gary White never appealed to CORC about any grievance except a 2002 grievance about a use of force (Exh. B). Director Eagen further states that defense counsel obtained Green Haven's records, which

---

[2] The regulations specify time limitations for each step. 7 N.Y.C.R.R. §701.5. The regulations also provide for extensions and exceptions. 7 N.Y.C.R.R. §701.6(g). It is undisputed that White took no appeal, and never sought an extension of the deadline to appeal.

7

show only two 2006 grievances by White (Exh. A) neither of which concerned any slippery condition or any lack of "wet floor" signs.

If, for the sake of argument, we were to accept White's statement that he filed an initial grievance, nevertheless he failed to comply with the requirement of full and proper exhaustion -- it is **undisputed** that he took no steps to appeal to CORC. He alleges that Green Haven authorities "never spoke to me, never had a hearing," but this does not excuse his failure to appeal to the next level.[3] The fact that he did not complete the whole process means that he failed to exhaust the procedure made available by DOCS.

Lack of exhaustion "is not jurisdictional," but is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 921 (2007). If an inmate files a federal lawsuit before completely exhausting the grievance procedures and appeals, then the Court must normally dismiss the unexhausted claim. 42 U.S.C. §1997e(a). *Jones,* 127 S.Ct. at 925-26. However, prior to the Supreme Court's *Woodford* decision, the Second Circuit issued several decisions saying that, notwithstanding the mandatory nature of the PLRA, there may be some circumstances where a

---

[3] Even if there is no response to a grievance, DOCS provides that an inmate may appeal to the next level. Thus, to exhaust, White should have appealed even if he got no response to his alleged initial grievance; an appeal was one of the remedies explicitly "available" to him under the New York State Code of Rules and Regulations. 7 N.Y.C.R.R. §701.6(g)(b)(ii)(2).

8

failure to exhaust may be excused.[4]  Judge Mukasey later discussed such possible exceptions in *Collins v. Goord*, 438 F. Supp.2d 399, 411 (S.D.N.Y. 2006), decided three weeks after the Supreme Court's *Woodford* decision.  He noted that "parts of the [Second Circuit's] *Hemphill* inquiry may be in tension with *Woodford*."  *Collins*, at 411, n. 13.  The Second Circuit has not yet fully addressed the extent to which the leniency of its earlier decisions may now be invalidated by *Woodford*.  See, *Macias v. Zenk*, 495 F.3d 37, 41, 43-44 (2d Cir. 2007), and *Benjamin v. Commissioner*, 2008 WL 4280074 (2d Cir. Sept. 18, 2008) (both discussing threats).  However, White's case is easily resolved without reaching that issue.

White's affirmation implicitly asserts that he qualifies for an exception to *Woodford's* general requirement of full and proper exhaustion.  However, he does not allege any circumstances that would fit any exception recognized by the Second Circuit, whether before or after *Woodford*.  White says: "It is the plaintiff's view that he received no response [because prison officials took]

---

[4] Several of those cases were argued together and were decided by the Second Circuit on the same day -- August 18, 2004.  In that group were: *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (exhausted claims may be allowed to proceed while unexhausted claims are dismissed); *Abney v. New York Dep't of Corr. Servs.*, 380 F.3d 663 (2d Cir. 2004) (behavior of defendants may render administrative remedies unavailable); *Hemphill v. State of New York*, 380 F.3d 380 (2d Cir. 2004) (threats by prison officials may in some instances be sufficient to estop the defendants from asserting the affirmative defense of non-exhaustion); and *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004) (plaintiff reasonably believed that DOCS regulations foreclosed recourse to grievance procedure for his particular complaint).

corrupt measures . . . to discontinue, dispose and to void grievance, and so such grievance could not realistically be brought to a CORC level." (Aff. in Opposition, ¶ 5.) But he presents no specifics to support his "view" that there may have been "corrupt measures," nor any plausible, objective reason why he could not "realistically" appeal to CORC in 2006. Back in 2002, he did appeal an unrelated grievance to CORC (see Exh. B to the Eagen Declaration).

Even in a pro se complaint, conclusory assertions do not suffice -- the party opposing a summary judgment motion "may not rest upon the mere allegations or denials of his pleading . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). This is true even when the issue is exhaustion. See *Rodriguez v. Hahn*, 209 F.Supp.2d 344, 348 (S.D.N.Y. July 17, 2002), where Judge Marrero ruled:

> Although Rodriguez asserts that he fully exhausted all available remedies, these assertions are insufficient to overcome a motion for summary judgment, even for a *pro se* plaintiff. Proceeding *pro se* does not otherwise relieve a litigant of the usual requirements for summary judgment, and a *pro se* party's bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment. Rodriguez has provided no evidence that he received a final determination from CORC before he commenced this action.

(quotation marks and citations omitted).

Nor does White's transfer from one State prison to a different State prison give him a valid excuse for his failure to exhaust.[5] He mailed his Complaint to our Court from Green Haven, only two weeks after he slipped and fell there. Later, he was transferred from Green Haven to Sing Sing, but he remained in the custody of the same agency, namely DOCS. "As long as [the prisoner] was in the custody of the agency against which he had grievances, ... he was required to use available grievance procedures." *Berry*, 366 F.3d 85, 88 (2d Cir. 2004). It is immaterial that courts have been more lenient with a prisoner who was transferred from a City prison to a State prison (*Berry*) or from a County jail to a State prison (*Rodriguez v. Westchester County Jail Correctional Dept.*, 372 F.3d 485, 488 (2d Cir. 2004).

If a prisoner's failure to exhaust is not justified, then the court must dismiss with prejudice. *Berry,* 366 F.3d at 87-88; *Giano*, 380 F.3d at 675. Accordingly, I recommend that Judge Batts dismiss White's complaint for failure to exhaust his administrative remedies.

   2. Negligence is a matter of state law, is not actionable under §1983, and and does not rise to a constitutional violation.

Section 1983 imposes liability on anyone who, under color of

---

[5] See 7 N.Y.C.R.R. §701.6(h)(2): "An inmate transferred to another facility may continue an appeal of any grievance. If the grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed . . . ."

state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." Thus, to recover under this section, a plaintiff must show a violation of a federal constitutional or statutory right.

In *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663 (1986), the Supreme Court held:

> We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.

(Emphasis in the original.) The Court elaborated:

> The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.
>
> \*     \*     \*
>
> We think that the actions of prison custodians in leaving a pillow on the prison stairs, or mislaying an inmate's property, are quite remote from the concerns just discussed. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.
> \*     \*     \*
>
> ... "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner, *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d

12

> 251 (1976) . . . . Where a government
> official's act causing injury to life,
> liberty, or property is merely negligent, "no
> procedure for compensation is
> *constitutionally* required." *Parratt*, supra,
> 451 U.S., at 548, 101 S.Ct., at 1919 (POWELL,
> J., concurring in result) (emphasis added).

*Daniels*, 474 U.S. at 331-33, 106 S.Ct. at 665-66.

White's Complaint alleges conduct that amounts to simple negligence, not a violation of a federal constitutional or statutory right. *Daniels* and its progeny clearly preclude White's lawsuit. See, *e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1718 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005) ("By ruling in *Daniels* that a negligent act could not amount to a constitutional deprivation, the Court . . . clearly articulated that a finding of intentional conduct was a prerequisite for a due process claim"); *Davis v. Reilly*, 324 F.Supp.2d 361, 367 (E.D.N.Y. 2004)("[F]ailure to provide shower mats does not rise to the level of a constitutional violation within the meaning of Section 1983 and, thus is not actionable").

3. <u>The Complaint does not allege personal involvement by Superintendent Ercole</u>.

White names Superintendent Robert Ercole as the sole defendant. But he does not allege that Ercole was personally involved in leaving water on the floor without putting up warning signs. Nor does he allege that, prior to the injury, Ercole had

13

personal knowledge of the wet floor or the lack of signs.  White merely alleges that "The supt. of this facility is []liable and neglects to [en]force the safety procedures required by law," and "At a minimum level, Superintendent Robert Ercoles, is in part personally responsible for breach in constitutional health and safety standard." (Complaint, p. 3; Aff. in Opposition ¶6.) Thus, even if White had alleged conduct which could rise to the level of a constitutional violation, and even if he had exhausted his administrative remedies, our Court would have to dismiss the Complaint against the sole defendant.

"It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006), citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations and internal quotation marks omitted).[6]  Personal involvement is a question of fact.  *Farrell*, 449 F.3d at 484.  White has set forth no facts to show any personal involvement by Ercole.

    4.  <u>Other arguments</u>.

Finally, I will address two arguments made in paragraphs 9 and 10 of White's affirmation.  Paragraph 9 states:

---

[6] There are some circumstances in which a supervisory defendant may be found liable under § 1983, but White's allegations do not fit any of the exceptions.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), citing *Wright*, 21 F.3d at 501 (summarizing exceptions).

> 9) Until the Supreme Court decided
> *Booth*, claimant didn't realize that damage
> claims had to be exhausted as it didn't
> appear the grievance process was
> 'available['] for such purposes indicated in
> memorandum page 6. *Booth v. Churner*, 532
> U.S. 731, 735 (2001).

This makes no sense, since *Booth* was decided in 2001 and White's slip and fall was in 2006. Paragraph 10 states:

> 10) Please take further notice that
> defendant is deemed deliberately indifferent
> pursuant to 50-h of the General Municipal Law
> of the State of New York, as the above named
> defendant, Superintendent Robert Ercole, or
> his assisting counsel didn't request
> plaintiff to be orally examined relative to
> occurrence and extent of injuries, for which
> this claim was presented against defendant.

Section 50-h is not relevant to this case. First, it applies to claims against a municipality, not a claim against the State or a State official. Second, § 50-h simply gives a municipal defendant a right to examine a claimant under oath; it does not require such an examination. See General Municipal Law 50-h(1):

> Whenever a notice of claim is filed
> against a city, county, town, village, fire
> district, ambulance district or school
> district, the city, county . . . or school
> district shall have the right to demand an
> examination of the claimant....

### CONCLUSION AND RECOMMENDATION

I recommend that Judge Batts grant defendant's motion and dismiss the Complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this

recommendation within 10 business days after being served with a copy, (i.e. **no later than December 2, 2008**) by filing written objections with the Pro Se Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Deborah A. Batts, U.S.D.J. at Room 2510, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2nd Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(d). Any request for an extension of time must be addressed to Judge Batts.

                                        _____
                                        DOUGLAS F. EATON
                                        United States Magistrate Judge
                                        Room 1360, U.S. Courthouse
                                        500 Pearl Street
                                        New York, NY 10007

Dated:   New York, New York
         November 10, 2008

Copies of this Report and Recommendation (and a copy of White's affirmation that opposed the dismissal motion) are being mailed to:

Gary White, # 01-A-4032
Great Meadow Correctional Facility
11739 StBox 51
Comstock, New York 12821

Donald Nowve, Esq.
Assistant Attorney General
120 Broadway - 24th Floor
New York, NY 10271

Hon. Deborah A. Batts

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

2007

---

GARY WHITE,

    Plaintiff,

-against-

ROBERT ERCOLE, Superintendent,

    Defendant,

AFFIRMATION IN
OPPOSITION

06-CV-11361

Pro-Se

USDC SDNY
DOCUMENT
FILED
DOC #: _____
DATE FILED: _____

---

    GARY WHITE, a pro-se plaintiff and inmate housed at Sing Sing Correctional Facility, 354 Hunter Street, Ossining, New York 10562, affirms the following statements to be true under penalty of perjury.

    1) I am the pro-se plaintiff, petitioning from the county of Ossining, and claimant in the above-named case, and as such am fully familiar with the facts thereof.

    2) I make this affirmation in opposition to the defendant's motion to dismiss the above referenced claim.

    3) I make this affirmation in opposition, upon information and belief, the sources of which are my experience in bringing this claim, discussions with other pro-se petitioners, and the memorandum of the law in support of defendant's motion to dismiss.

    4) Primarily, plaintiff would oppose defendant's motion as premature and prejudicial, in defendant's argument and standard of review. Defendant directs his first point at plaintiff's failure to bring his grievance to a final (CORC) decision administrative appeal prior to the filing of complaint.

    5) The plaintiff did file a grievance with regards to a slipping and falling incident that took place at Green Haven Correctional Facility. It is the plaintiff's view that he


USDC SDNY
DATE SCANNED 10/6/08

received no response, due to corrupt measures taken to discontinue, dispose and to void grievance, and so such grievance could not realistically be brought to a CORC level, for review, and responds thereby denying plaintiff his liberty and constitutional right to due process. Soon thereafter plaintiff was transferred.

6) Health and safety, by merit of equal protection not based on race or gender. His Superintendent, Robert Ercoles, governmental objective to maintain and secure health and safety law standard within the institution in general. At minimum level, Superintendent Robert Ercoles, is in part personally responsible for breach in constitutional health and safety standard. (See U.S. Garren, C.A. 9, 1989: 893 F.3d 208, Constitutional Law 213.1 (1), Constitutional Law 213.1 (2).

7) To continue the memorandum of law in support of defendant's motion to dismiss is deemed prejudicial to the claimant as its being offered to the court by Superintendent Robert Ercoles, as a pro-se motion, is without merit, as it is obvious, the notarized efforts of two highly trained licensed attorneys, not to mention Attorney General Andrew M. Cuomo and Assistant Attorney General Donald Nowve.

8) Moreover, as such litigation found here, and not only being a question of law, but moral standard. The claimant diligently prays that this Court entitle a more relevant constitutional case law than provided in paragraph 6, to balance the scales of this constitution, measurably, to unfold a more statuary view point of claimant's future medical liberty, if the Court deems it just and proper.

9) Until the Supreme Court decided Booth, claimant didn't realize that damage claims had to be exhausted as it didn't appear the grievance process was "available for

such purposes indicated in memorandum page 6. Booth v Churner, 532 U.S. 731, 735 (2001).

10) Please take further notice that defendant is deemed deliberately indifferent pursuant to 50-h of the General Municipal Law of the State of New York, as the above named defendant, Superintendent Robert Ercole, or his assisting counsel didn't request plaintiff to be orally examined relative to occurrence and extent of injuries, for which this claim was presented against defendant.

Gary White, 01-A-4032<br>
Sing Sing Corr. Fac.<br>
354 Hunter Street<br>
Ossining, New York 10562<br>
Plaintiff, pro-se

cc: Donald Nowve, Esq.
    Asst. Attorney General
    State of New York
    120 Broadway—24th Floor
    New York, N.Y. 10271